1   Eugene K. Yamamoto (State Bar No. 112245)
    LAW OFFICES OF EUGENE K. YAMAMOTO
2   Lakeside Regency Plaza
    1555 Lakeside Drive, Suite 64
3   Oakland, CA 94612
    Telephone:  (510) 433-9340
4   Facsimile:   (510) 433-9342

5   Attorneys for Secured Lienholder,
    EIM-El Segundo,
6   A California limited partnership

7

8                 UNITED STATES BANKRUPTCY COURT

9          NORTHERN DISTRICT OF CALIFORNIA - OAKLAND DIVISION

10

11  In re                              Case No.   10-41570

12  Azid Amiri,                        Chapter 13

13                                     MEMORANDUM OF POINTS AND
                                       AUTHORITIES IN SUPPORT OF MOTION
14              Debtor.                FOR DETERMINATION THAT THE
                                       AUTOMATIC STAY IS INAPPLICABLE
15                                     OR ALTERNATIVELY FOR RELIEF
                                       FROM THE AUTOMATIC STAY, AND
16                                     FOR SANCTIONS

17                                     DATE:    June 16, 2010
                                       TIME:    10:30 a.m.
18                                     CTRM:  220

19                                     RS No:  EKY-1

20                                     The Honorable Randall J. Newsome

21

22

23

24

25

26

27

28

In re Amiri, No. 10-41570
Memorandum Of Points And Authorities In Support Of Motion For Determination That The Automatic Stay
Is Inapplicable, Or Alternatively For Relief From The Automatic Stay, And For Sanctions

# TABLE OF CONTENTS

I.  PRELIMINARY STATEMENT.................................................................................1

II. FACTUAL BACKGROUND................................................................................2

    A.    EIM's Underlying Loan And The Loan Default Debtor's Acquisition Of The Property................................................................................2

*Inaccuracies In The Debtor's Schedules, Title To The Property, Additional Liens And No Equity..................................................................5*

III. LEGAL ANALYSIS..............................................................................................6

    A.    The Automatic Stay Does Not Preclude Foreclosure Of Property That Is Not Property Of The Estate......................................................6

        1. Notwithstanding The Debtor's Inaccurate Schedules, The Debtor Does Not Own The Property...........................................................7

        2. The Debtor's Ownership Of Kang, Inc. Does Not Make The Corporation's Assets Property Of The Estate.................................8

    B.    Relief From The Automatic Stay Is Appropriately Granted To EIM..........10

        1. Cause Exists To Grant Lender Relief From The Automatic Stay Under Bankruptcy Code Section 362(d)(1) .....................................11

            a. The Debtor's Bad Faith Filing....................................12

            b. The Debtor Has The Burden Of Proof In This Bad Faith Case.............................................................17

            c. Other Cause Exists To Grant Relief From Stay.............17

        2. EIM Is Entitled To Relief From The Automatic Stay Because The Debtor Lacks Equity In The Property And The Property Is Not Necessary To An Effective Reorganization (§362(d)(2)).................19

            a. The Debtor Lacks Equity In The Property...................19

            b. No Effective Reorganization Is In Prospect..................19

    C.    The Debtor And Its Counsel Should Be Sanctioned For This Bad Faith Filing And The Improper Assertion Of The Automatic Stay To Hinder, Delay and Defraud EIM ............................................................... 20

IV. CONCLUSION.....................................................................................................21

# TABLE OF AUTHORITIES

## CASES

*Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914 (1979)........................................ 7

<u>*Duggan v. Highland-First Avenue Corporation,*</u> 25 B.R. 955 (Bkrtcy. C.D.Cal. 1982) ...12

*In re Advanced Ribbons and Office Products, Inc.,* 125 B.R. 259 (9th Cir. BAP 1991). 7, 9

*In re Arnold,* 806 F.2d 937 (9th Cir.1986) .......................................... 14

*In re B& B Enterprise,* 69 B.R. 45  (Bkrtcy. E.D. Mo. 1986) ............................ 12, 20

*In re Bingham,* 68 B.R. 933 (Bankr.M.D.Pa.1987) .................................... 17

*In re Calvert,* 135 B.R. 398 (Bkrtcy. S.D.Cal. 1991)................................ 7, 8

*In re Casgul of Nevada, Inc.,* 22 B.R. 65 (9th Cir. BAP 1982) ........................ 7

*In re Condel, Inc.,* 91 B.R. 79 (9th Cir. BAP 1988) ................................... 7

*In re Contractors Equipment Supply Co.,* 861 F.2d 241(9th Cir.1988)....................... 7

*In re: Ellis,* 60 B.R. 432 (9th Cir. B.A.P. 1985) ...............................11

*In re Gregg's Custom Vans,* 122 B.R. 727 (Bkrtcy. W.D. Mo 1991).................... 12, 20

*In re Grieshop,* 63 B.R. 657 (N.D.Ind.1986).......................................... 15

*In re Holi-Penn, Inc.,* 535 F.2d 841 (3d Cir. 1976)................................17

*In re Jewett,* 146 B.R. 250  (9th Cir. B.A.P. 1992) .,........................ 7, 8, 9, 10

*In re Kemble,* 776 F.2d 802, 807 (9th Cir. 1985)  .................................. 14

*In re Lawson, supra,* 93 B.R. 979, 986 (Bkrtcy. N.D. Ill. 1988) ....................16

*In re Loughnane,* 28 B.R. 940 (Bankr. D.Colo.1983) ...................................7, 8,10

*In re Panas,* 63 B.R. 637 (Bkrtcy. E.D. Pa. 1986) ...............................11

*In re Peoples Bankshares, Ltd.,* 68 B.R. 536 (Bankr.N.D. Iowa 1986).................7, 8, 9

*In re Professional Business Planning & Research, Inc.,* 46 BCD 220 (Bkrtcy. C.D.Cal. 2006) ...................................................... 7

*In re Powers,* 135 B.R. 980 (Bkrtcy. C.D. Cal. 1991) .................................. 11-17, 20

*In re Rimgale,* 669 F.2d 426 (7th Cir.1982) ........................................ 16

*In re Rohnert Park Auto Parts, Inc.,* 113 B.R. 610 (9th Cir. BAP 1990).......................7

*In re Setzer,* 47 B.R. 340 (Bankr. E.D.N.Y.1985)) ................................... 17

*In re Sierra,* 73 B.R. 322 (Bkrtcy. P.R. 1987) ................................... 11

*In re Smith,* 848 F.2d 813 (7th Cir.1984) ......................................... 16

*In re Terry,* 630 F.2d 634 (8th Cir.1980)........................................16

*In re Thirtieth Place, Inc.,* 30 B.R. 503 (9th Cir. BAP 1983) ........................14

*In Re Torrez,*132 B.R. 924 (Bkrtcy. E.D. Cal. 1991).................................7, 11, 20

*In Re Venture Properties, Inc.,* 37 B.R. 175 (Bankr.D.N.H.1984) ... ....................7

*In re Victory Construction Co.,* 9 B.R. 549 (Bankr.C.D.Cal.1981) ............................14

*In re Walker,* 861 F.2d 597 (9th Cir.1988)....................................................8

*In re Yukon Enterprises, Inc.,* 39 B.R. 919 (Bankr. C.D.Cal.1984) ....................14, 15

*Stewart v. Gurley*, 745 F.2d 1194 (9th Cir. 1984); ........................................................ 19

*United Sav. Ass'n of Tex. V. Timbers of Inwood Forest Assoc., Ltd,*
484 U.S. 365 (1988) ................................................................................ 19

## STATUTES

11 U.S.C. §109(e) ............................................................................... 5, 11

11 U.S.C. §362(a) ................................................................................ 6, 7

11 U.S.C. §362(d) .....................................................................................8

11 U.S.C. §362(d)(1) ...................................................................10, 11, 19

11 U.S.C. §362(d)(2) ...........................................................................10, 19

11 U.S.C. §506(a)(1) ............................................................................... 11

11 U.S.C. §541 ...........................................................................................8

11 U.S.C. §1112(b) ...................................................................................12

11 U.S.C. §1112(b)(1) ...............................................................................12

11 U.S.C. §1112(b)(2) ...............................................................................12

11 U.S.C. §1112(b)(3) ...............................................................................12

In re Yosemite Club Partners, No. 08-43755

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR RELIEF FROM
THE AUTOMATIC STAY AND ADEQUATE PROTECTION

Case: 10-41126  Doc# 16  Filed: 06/21/10  Entered: 06/21/10 23:51:28  Page 4 of 26

# I. **PRELIMINARY STATEMENT**

This Chapter 13 case was filed by Debtor, Azad Amiri ("Debtor"), to delay secured lienholder, EIM-El Sequndo, a California limited partnership ("EIM") from completing a foreclosure on a gas station not owned by the Debtor, but rather owned by a corporation, Kang Property, Inc. ("Kang, Inc.") and individual Abolghassam H. Shahidi ("Shahidi"). The Debtor, who lists himself in his Petition as dba, Brentwood American Station, asserted the automatic stay of his individual Chapter 13 case to preclude EIM's foreclosure company from completing the sale on the real property and improvements thereon, including a gas station, located at 7920 Brentwood Blvd, Brentwood, CA ("Property"). The Debtor does not hold title to the Property and the Property is not property of the estate.

The Debtor's Bankruptcy Schedules are minimal, show no unsecured creditors, and list only the two secured creditors on the Property (even though there are delinquent taxes and several judicial liens recorded against the Property). The Debtor lists no income other than what appears to be the gas station income of $22,000 per month and asserts monthly expenses of $18,220. Apparently the Debtor is using the revenues from the Property, which are cash collateral for EIM's loan under its Deed of Trust, without EIM's consent or court approval.

This is a sham bankruptcy filed in bad faith to hinder, delay and defraud EIM from enforcing its debt and foreclosing on the Property. In direct contradiction of Schedule A listing the Property as an asset of the Debtor, the Debtor then lists ownership of 100% of the stock of Kang, Inc. in Schedule B and states that Kang, Inc. is the title owner. The inaccurate listing of this distressed Property and bankruptcy filing on the eve of foreclosure and immediate assertion of the automatic stay as to Property that is not owned by the Debtor, not property of the estate and is owned by another non-debtor entity and non-debtor individual, is an abuse of the bankruptcy system that should not be allowed. This Court should immediately determine that the automatic stay of the

In re Amiri, No. 10-41570
Memorandum Of Points And Authorities In Support Of Motion For Determination That The Automatic Stay Is Inapplicable, Or Alternatively For Relief From The Automatic Stay, And For Sanctions

Debtor's bankruptcy does not apply to preclude EIM's foreclosure of the Property and should prevent further harm to EIM from the Debtor's abuse of the bankruptcy system.

Both the Debtor and his counsel should be required to demonstrate why this is not a bad faith filing in order to falsely assert the protections of the automatic stay and their factual and legal basis for such filing and listing the Property in the Debtor's schedules as if the Debtor owned the Property. EIM seeks sanctions against the Debtor and his counsel, including sanctions under Bankruptcy Rule 9011, for the erroneous scheduling of an asset that the Debtor does not own and the bad faith bankruptcy filing, both for the purpose of asserting the automatic stay to hinder, delay and defraud EIM from completing its foreclosure.

## II.  FACTUAL BACKGROUND

### A.  EIM's Underlying Loan And The Loan Default

On or about July 14, 2004, Agoura Associates Limited, a California limited partnership, through the use of a tax-deferred 1031 exchange accommodator, Timcor Financial Corporation, sold a gas station located at 7920 Brentwood Blvd, Brentwood, CA ("Property") to Kang, Inc. for approximately $1,186,000. Declaration of Emma Gardner In Support Of Motion For Determination That The Automatic Stay Is Inapplicable Or Alternatively For Relief From The Automatic Stay ("Gardner Dec."), ¶3, Exh. A. The sale and purchase of the Property was financed, in part, by Kang, Inc. obtaining two (2) loans, one from Kolto Merchant Financial ("Kolto") and the second from EIM, secured by the Property. Gardner Dec., ¶4.

Kolto appears to be an investment manager and holds the first priority deed of trust recorded against the Property in the official records of the Contra Costa County Recorder's Office ("Recorder's Office") on July 20, 2004 ("Kolto Trust Deed"), which secures a promissory note held by Kolto in the original amount of $650,000. There are numerous beneficiaries listed on the Kolto Trust Deed, including, without limitation,

Memorandum Of Points And Authorities In Support Of Motion For Determination That The Automatic Stay Is Inapplicable, Or Alternatively For Relief From The Automatic Stay, And For Sanctions

Bosco's Delicatessen Inc. Profit Sharing Pension Plan Rollover, Nancy K. Austin, Inc. Profit Sharing Plan, A. Marvin Brooks, M.D., Inc. profit Sharing Trust, Ronald L. Stern Profit Sharing Pension Plan Rollover, David L. Berger, MD, Inc. Money Purchase Pension Plan, Louise S. Wallace Trust dated October 29, 1993 and Janet L. Atwood. Gardner Dec., ¶4.

EIM, holds a second priority Short Form Deed of Trust ("Deed of Trust") dated July 14, 2004, and recorded on July 20, 2004, against the Property as Document No. 2004-027758 in the official records of the Recorder's Office, which Deed of Trust secures an Installment Note ("Note") dated July 14, 2004, in the initial principal amount of $345,000 executed by Kang, Inc. Gardner Dec., ¶5, Exh. B. The Deed of Trust contains an absolute assignment to EIM of all rents, issues and profits. Id.

On or about October 21, 2004, Abolghassam H. Shahidi ("Shahidi"), acquired a 50% interest in the Property pursuant to Grant Deed recorded on October 21, 2004. Gardner Dec., ¶6, Exh. C.

Beginning on February 20, 2009, and each month thereafter, Kang, Inc. defaulted on the Note by failing to make the regular monthly loan payments of principal and interest to EIM which are due each calendar month ("Regular Monthly Payments") (collectively, the "Payment Defaults"). Gardner Dec., ¶7.

Despite written notice of the Payment Defaults from EIM to Kang Inc., Kang, Inc. failed to cure these Payment Defaults. Gardner Dec., ¶8.

As a result of the Payment Defaults, on September 25, 2009, EIM commenced a non-judicial foreclosure proceeding by recording a Notice of Default ("Notice of Default") against the Property. Gardner Dec., ¶9, Exh. D.

On or about January 13, 2010, a Notice of Sale ("Notice of Sale") was published and recorded in the Recorder's Office as Document No. 20100007294, setting EIM's non-judicial foreclosure sale for February 16, 2010. Gardner Dec., ¶10, Exh. E.

In re Amjid, No. 10-41570
Memorandum Of Points And Authorities In Support Of Motion For Determination That The Automatic Stay Is Inapplicable, Or Alternatively For Relief From The Automatic Stay, And For Sanctions

On February 12, 2010, just 4 days prior to EIM's foreclosure sale, Azad Amiri ("Debtor"), filed the above-captioned Chapter 13 Bankruptcy Case listing himself in the Chapter 13 Bankruptcy Petition as dba "Brentwood American Station". Gardner Dec., ¶11. Debtor's attorney, Thomas M. Swihart, Esq. ("Swihart"), sent written notices to EIM or its affiliates and EIM's trustee under the Deed of Trust, First American Title Company ("First American"), asserting that: (i) the Debtor is the successor in interest to Kang Property, Inc. with regard to the Property; (ii) the Debtor is doing business as Brentwood American Station; and (iii) that the automatic stay of Debtor's Chapter 13 Case precluded the foreclosure sale ("Swihart's Bankruptcy Notice"). Gardner Dec., ¶12, Exh. F. Curiously included in Swihart's Bankruptcy Notice is a suspect document entitled Board Resolution of Kang, Inc. authorizing the transfer of shares to the Debtor on August 17, 2009 with no mention of any consideration and no actual share transfer. Id.

As a result of Swihart's Bankruptcy Notice including Swihart's assertion of the automatic stay, First American required EIM to obtain an order from this Court that either the automatic stay did not apply to preclude the foreclosure sale, or that EIM was granted relief from the automatic stay. Gardner Dec., ¶13.

As a result of the foregoing, EIM retained counsel to enforce its rights and protect its interests under the Loan Documents, and has incurred estimated attorneys' fees and costs in excess of $7,000.00. Gardner Dec., ¶14. Despite EIM's multiple requests, the Debtor refused to stipulate to the inapplicability of the automatic stay or to relief from the automatic stay.

As of April 30, 2010, the amount to cure and reinstate the Note is $79,791.50, comprised of 15 Regular Monthly Payments in the amount of $4,370.31, $3,059.22 in late charges, a $7.00 bounced check fee, $7,000.00 in attorneys' fees and costs, and $3,952.12 in trustee's foreclosure fees and costs. Gardner Dec., ¶18.

The entire amount of the Note is due and payable since it was accelerated by the provisions of the Notice of Default. As of April 30, 2010, the amount required to pay off

Case 10-41570   Doc# 16   Filed: 05/21/10   Entered: 05/21/10 23:51:28   Page 8 of 26
Memorandum Of Points And Authorities In Support Of Motion For Determination That The Automatic Stay
Is Inapplicable, Or Alternatively For Relief From The Automatic Stay, And For Sanctions

the Loan is $266,762.35, comprised of $226,849.99 in principal, $21,941.90 in interest, $3,059.22 in late charges, $7,000 in estimated attorneys fees and costs, and $3,952.12. in trustee's foreclosure fees and costs   Gardner Dec., ¶19.

**B.   Inaccuracies In The Debtor's Schedules, Title To The Property, Additional Liens And No Equity.**

Although the Debtor filed this case on February 12, 2010, the Debtor did not file its inaccurate and misleading Bankruptcy Schedules until March 3, 2010.

In Schedule A, the Debtor lists the Property as a real property asset with a value of $700,000 and liens of $880,000.  Although EIM believes that the actual value of the Property is higher, for purposes of this motion only EIM will use the Debtor's valuation. Contrary to the Debtor's Schedule A, title to the Property remains vested in Kang, Inc. and Abolghassam H. Shahidi as the record title holders and the Debtor's name does not appear on the title as of April 14, 2010.  Gardner Dec., ¶15, Exh. G.

The Debtor's Schedule D lists only Kolto as having a secured claim in the amount of $651,000.00 and EIM as having a claim of $229,000.00 (instead of EIM's actual obligation for $266,762.35).  The Debtor's Schedule A and D, however, fail to disclose the other liens recorded against the Property totaling $115,190.02, which include: (i) $7,800.00 in delinquent property taxes; (ii) judgment lien for $2,537.00 recorded on January 10, 2007, by Pepsi Bottling Company; (iii) judgment lien for $2,371.00 recorded on February 3, 2009, by Northern California Collection Service; and a $102,482.02 writ of attachment lien recorded on April 3, 2009, by Ramos Oil Company.  Gardner Dec., ¶15, and  ¶20, Exhs. G. and Exh. J.

When these liens are combined with the EIM debt and the Kolto debt (which is likely larger than listed by the Debtor), the actual secured claims against the Property exceed $1,132,952.37, which not only exceeds the Debtor's $700,000.00 valuation of the Property, but exceeds the secured debt limitations that Bankruptcy Code Section

109(e) allows to qualify as a Chapter 13 Debtor. There is no equity in the Property for the Debtor or his estate.

In Schedule B, the Debtor lists himself as holding 100% of the stock ownership of Kang, Inc. (in Schedule B, item 13) and then, in contradiction of Schedule A, states that Kang, Inc. was the "titled owner" of the Property. Gardner Dec., ¶20, Exh. J. The Debtor lists $240,000 in revenues from the gas station in answer to question 1 of the Debtor's Statement of Financial Affairs for the years 2008 and 2009 and $44,000 in income for 2010 through February 28, 2010. The Debtor's income for the 2008 and 2009 years is inaccurate since, according to the Director's Resolution, no transfer of shares of Kang, Inc. occurred, if ever, until August 17, 2009. See Exh. G and Exh. J to Gardner Dec. Moreover, If the Debtor holds 100% of the stock of Kang, Inc., and is listing Kang, Inc.'s income, it should know that the judicial liens omitted in the Debtor's Schedules A and D, were also filed by the lien holders with the California Secretary of State's Office ("Secretary's Office") against Kang, Inc., and that there is active pending litigation ready for trial by Tower Energy, against Kang, Inc., in the Contra Costa County Superior Court (Martinez Division), Case No. CIVMSC08-01996 ("Pending Litigation"). Gardner Dec., ¶16, Exh. H. There is no discussion of this litigation in response to Question 4 of the Statement of Financial Affairs of the Debtor.

Additionally, the Secretary's Office records show that Sarbjit Singh Kang remains the agent for service of process for Kang Property, Inc. Gardner Dec., ¶17., Exh. I.

The secured claims against the Property, in excess of $1,132,952.37, exceed the Debtor's $700,000.00 valuation of the Property and there is no equity in the Property for the Debtor or his bankruptcy estate. Id., Exh. J.

## III.    LEGAL ANALYSIS

### A.    The Automatic Stay Does Not Preclude Foreclosure Of Property That Is Not Property Of The Estate.

The Automatic Stay in Bankruptcy Code Section 362(a) precludes continued

action against the Debtor, property of the Debtor or property of the Debtor's bankruptcy estate. 11 U.S.C. §362(a). The Automatic Stay does not, however, preclude actions against non-debtors or their pledged property. *In Re Torrez,* 132 B.R. 924, 937-939 (Bkrtcy. E.D. Cal. 1991) (stay inapplicable to prevent lender from foreclosing on real property pledged by non-debtors as collateral for the debtor's obligations; "[t]he protections of the automatic stay only enure to the benefit of the debtor, property of the debtor, or property of the estate …. there exists no provision in 11 U.S.C. §362 protecting non-debtors or their property.") (citing, *In re Advanced Ribbons and Office Products, Inc.* 125 B.R. 259, 263 (9th Cir. BAP 1991); *In re Rohnert Park Auto Parts, Inc.*, 113 B.R. 610, 614 (9th Cir. BAP 1990); *In re Condel, Inc.*, 91 B.R. 79, 82 (9th Cir. BAP 1988); *In re Casgul of Nevada, Inc.*, 22 B.R. 65, 66-67 (9th Cir. BAP 1982)); *In re Professional Business Planning & Research, Inc.*, 46 BCD 220 (Bkrtcy. C.D.Cal. 2006) (stay is inapplicable to foreclosure on real property owned by non-debtor partnership where one of the partners individually files for bankruptcy)); *In re Calvert,* 135 B.R. 398 (Bkrtcy. S.D.Cal. 1991) (stay inapplicable to corporate action of non-debtor corporation owned 50% by debtor even if action reduces share value) citing, *In re Peoples Bankshares, Ltd.,* 68 B.R. 536 (Bankr.N.D. Iowa 1986), *In Re Venture Properties, Inc.,* 37 B.R. 175 (Bankr.D.N.H.1984), and *In re Loughnane,* 28 B.R. 940 (Bankr. D.Colo.1983).

1. **Notwithstanding The Debtor's Inaccurate Schedules, The Debtor Does Not Own The Property.**

Here, the Debtor's schedules are intentionally incomplete, vague and contradictory. First, the Debtor lists the Property in his Schedule A, as if he owns the Property. However, an April 14, 2010, title search reflects that title to the Property remains in the name of Kang, Inc. and Shahide. The Debtor's interest in property is determined by state law. *In re Jewett,* 146 B.R. 250, 251-252 (9th Cir. B.A.P. 1992), citing *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); *In re Contractors Equipment Supply Co.,* 861 F.2d 241, 244 (9th Cir.1988).

Ownership of land in California is determined by documents recorded in the County Recorder's office. See, *In re Jewett, supra*, 146 B.R. at 252 (9th Cir. B.A.P. 1992) (perfection of an interest in real property does not occur until recordation). Since the Debtor does not own the Property, it is not property of the estate. 11 U.S.C. §541.

**2. The Debtor's Ownership Of Kang, Inc. Does Not Make The Corporation's Assets Property Of The Estate.**

The Debtor incorrectly asserts that the Property, which it admits is owned by Kang, Inc., is an asset of the Debtor's estate. Two cases cited in *In Re Calvert, supra*, 135 B.R. 398, are on point here, *In re Loughnane*, 28 B.R. 940, *supra*, and *In re Peoples Bankshares, Ltd., supra*, 68 B.R. 536.

In *Loughnane*, the individual Chapter 13 debtor, owned 100% of the stock of a non-debtor corporation, Jim Dins Food, Inc. The IRS levied on the corporation's bank account for unpaid taxes and the debtor brought contempt proceedings against the IRS for violating the automatic stay. The Court held noted that notwithstanding that the debtor owned 100 percent of the non-debtor corporation's stock, the property interest of his bankruptcy estate "extends only to the intangible personal property rights represented by the stock certificates.... While the ownership interest of the debtor in stock of Jim Dins Foods, Inc. is property of the estate, the corporate entity is not property of the estate." Id. at 942.

Just as in *Loughnane*, the Chapter 13 Debtor's claimed 100% ownership of Kang, Inc. only extends to the intangible personal property rights represented by any purported stock in Kang, Inc. that the Debtor holds. Kang, Inc.'s assets, just as the assets of Jim Dins Food, Inc. in *Loughnane*, are not property of the Debtor's estate.

In *In re Peoples Bankshares, Ltd.*, a Chapter 11 debtor (a bank holding company) owned 100% of the stock of 5 subsidiary non-debtor banking corporations as its primary assets. The debtor sought a determination that the automatic stay precluded actions by the state superintendent of banks as to the 5 banks, which the debtor argued could

affect the value of the debtor's stock in the five banks, or for injunctive relief under § 105. The bankruptcy court declined to impose a Section 105 injunction and determined that the wholly owned subsidiary corporations are separate, distinct entities which are not debtors in bankruptcy court and held

> the automatic stay of actions against a debtor pursuant to § 362(a)(2) does not apply to the five state banks which are controlled by Peoples Bankshares....

The debtor's ownership of the stock of the five state banks

> does not make the banks themselves property of the bankruptcy estate. **Although a debtor owns 100 percent of the stock of a corporation, the property interest of the debtor's bankruptcy estate extends only to the intangible personal property rights represented by the stock certificates**; the technical, legal distinctions between corporations will be respected and applied with reference to the automatic stays of actions against property of the estate.

Id. at 539 (emphasis added); See, *In re Advanced Ribbons and Office Products, Inc*. 125 B.R. supra at 263 (foreclosure on shares of debtor corporation held by debtor's sole shareholder, which were pledged as collateral for debtor's obligation, is not action to collect a claim against the debtor and is instead treated as enforcing claim against shareholder).

The only nexus between EIM and the Debtor is the Debtor's inaccurate assertion of ownership of the Property against which EIM holds its Deed of Trust. The Debtor is not the record owner of the Property, is not EIM's borrower, and has no contractual relationship with EIM. EIM's foreclosure sale on the Property is not stayed because the Property is not property of the estate. Since EIM has not contractual relationship with the Debtor, whatsoever, it cannot be argued that EIM is enforcing a claim against the Debtor, rather, the obligation that is being foreclosed is an obligation of Kang, Inc. the maker of the Note and part owner of the Property.

The Debtor's asserted ownership of 100 percent (100%) of Kang, Inc., which is the 50% owner of the Property the Debtor misleadingly suggests that Kang, Inc. is the

titled owner of the Property, ignoring the interests of Shahide.  Moreover, EIM has serious doubts as to the Debtor's claimed ownership of Kang, Inc., given that there is ongoing litigation against Kang, Inc. in the state court by Tower Energy Company and the Debtor does not appear in either this litigation or in the corporate documents filed with the California Secretary of State.

As in *Loughnane* and *Peoples Bankshares,* the Debtor's purported ownership of the shares of Kang, Inc. does not cause that corporation's assets to become assets of the Debtor's bankruptcy estate so as to automatically stay EIM's foreclosure.  *In re Loughnane, supra,* 28 B.R. at 942; *In re Peoples Bankshares, Ltd., supra,* 68 B.R. at 539.  The only interests of the Debtor  are the "intangible personal property rights represented by the stock certificates."  *In re Peoples Bankshares, Ltd., supra,* 68 B.R. at 539.

This Court should grant Lender's motion and hold the automatic stay inapplicable to Lender's foreclosure on the Property.

**B.      Relief From The Automatic Stay Is Appropriately Granted To EIM**

Even assuming, *arguendo,* that EIM's foreclosure sale were stayed by the Debtor's Bankruptcy Case, which it is not, relief from stay is mandated here for: (i) "cause," including the lack of adequate protection (§362(d)(1)); and (ii) because the Debtor and his bankruptcy estate lacks equity in the Property coupled with the Property not being necessary for an effective reorganization (§362(d)(2)).  11 U.S.C. §362(d)(1) and (2).

Both of these grounds are present here where: (1) there is "cause" arising from: (a) the bad faith filing which resulted from a supposed eve of foreclosure transfer of the Property (which may not even have occurred) to hinder, delay and defraud EIM; (b) the lack of adequate protection to EIM from the Debtor's use of EIM's cash collateral without EIM's consent or court order, failure to pay Property taxes, failure to pay the senior lender, failure to provide complete and accurate Schedules and Statements and failure

1  to pay anything to EIM; and, (c) the Debtor has secured debts exceeding $1,132,952.37,

2  which exceeds the maximum $1,010,650 in secured claims that a Chapter 13 Debtor can

3  have to qualify as a Chapter 13 Debtor under Bankruptcy Code Section 109(e)

4  applicable at the time the Debtor commenced this case -- or if you use the Debtor's

5  Property valuation of $700,000, the undersecured debt of $432,952.37, which becomes

6  and unsecured debt under Bankruptcy Code Section 506(a)(1), exceeds the maximum

7  unsecured debt of $336,900; and (2) the Debtor lacks equity in the Property and the

8  Property is not necessary for an effective reorganization because this is a Chapter 13

9  restructure not a reorganization case and the Debtor's Chapter 13 Plan is unconfirmable

10  (i.e. the Debtor cannot restructure the debts of a non-debtor corporation through its

11  Chapter 13 Plan or a non-debtor individual, Shahide.  Relief from the automatic stay

12  must be granted.  11 U.S.C. §§109(e), 506(a)(1).

13      1.      **Cause Exists To Grant Lender Relief From The Automatic Stay Under Bankruptcy Code Section 362(d)(1)**

14

15      Bankruptcy Code Section 362(d)(1) provides that the Court shall grant Lender

16  relief from the automatic stay for "cause," including the lack of adequate protection.

17  "Cause" is not defined in Section 362, but rather is left to be defined by case law.  Cause

18  has been found to exist, among other circumstances, where there is a transfer of

19  distressed property to an individual or new entity just prior to its bankruptcy filing or a

20  failure to make periodic payments to secured creditors.  *In re Powers*, 135 B.R. 980

21  (Bkrtcy. C.D. Cal. 1991) (transfer of a partial ownership of distressed real property

22  immediately prior to debtor's chapter 13 filing is "bad faith," "cause" for dismissal even

23  after plan confirmed and should be sanctioned); *In re Panas*, 63 B.R. 637 (Bkrtcy. E.D.

24  Pa. 1986) (failure to tender periodic payments to secured creditor constitutes "cause"

25  under Section 362(d)(1)); *In re: Ellis*, 60 B.R. 432, 435 (9th Cir. B.A.P. 1985) (failure to

26  make post-confirmation payments constitutes cause for relief from stay in Chapter 13

27  case); *In re Sierra*, 73 B.R. 322, 323 (Bkrtcy. P.R. 1987) (failure to make periodic post-

28

petition payments constitutes "cause" for granting relief from stay).[1]

### a. The Debtor's Bad Faith Filing

"Cause" exists here to grant Lender relief from the automatic stay as a result of the Debtor's bad faith filing of this sham Chapter 13 bankruptcy case and improper assertion of the automatic stay to preclude EIM from foreclosing on the Property which is not property of his bankruptcy estate. The Debtor's Schedule A is wholly inaccurate in that the Debtor does not own the Property (i.e. there is no recorded deed to the Debtor transferring title) and the true number and amount of liens against the Property are not set forth. It is fundamental that "creditors must be able to rely on schedules prepared by debtors and their attorneys in enforcing their rights under security documents. *In re Torrez, supra*, 132 B.R. at 940, citing, *In re Gregg's Custom Vans*, 122 B.R. 727, 728 (Bkrtcy. W.D. Mo 1991) and *In re B& B Enterprise*, 69 B.R. 45, 47 (Bkrtcy. E.D. Mo. 1986).

The asserted transfer of the Property never was recorded if it occurred at all. Similarly, the transfer of the ownership of the shares of Kang, Inc. does not appear to have occurred given the actively litigated lawsuit against Kang, Inc. in state court which is ready for trial and the failure of the Debtor to list this lawsuit in his statement of affairs, leading one to conclude that the Debtor is not involved in the lawsuit. Even if any of these transfers occurred, these transfers occurred in the distressed situation where the debt owed to EIM was in serious default and the Property, owned fifty-percent by Kang, Inc. and fifty-percent by Shahide, was being foreclosed. The distressed Property transfer, or the purported transfer of the stock of Kang, Inc., to the Debtor (assuming either occurred), the subsequent commencement of this Chapter 13 case just two days

---

[1] Examples of cause for dismissal or conversion of Chapter 11, a far more drastic remedy,are found in11 U.S.C. §1112(b) where there is: (i) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation (§1112(b)(1)); (ii) inability to effectuate a plan (§1112(b)(2)); (iii) unreasonable delay by the debtor that is prejudicial to creditors (§1112(b)(3)); or (iv) denial of confirmation of every proposed plan and denial of a request made for additional time for filing another plan or a modification of a plan (§1112(b)(5)).

Case: 10-41570    Doc# 16    Filed: 05/21/10    Entered: 05/21/10 23:51:28    Page 16 of

In re Amiri, No. 10-41570
- 12 -
Memorandum Of Points And Authorities In Support Of Motion For Determination That The Automatic Stay Is Inapplicable, Or Alternatively For Relief From The Automatic Stay, And For Sanctions

before the scheduled foreclosure sale, the lack of any unsecured creditors, the incomplete scheduling of secured creditors, the inaccurate Schedules and Statements filed by the Debtor, the immediate assertion of the automatic stay by Debtor's counsel to halt EIM's foreclosure based upon the Debtor's inaccurate representation of ownership of the Property, and the Debtor's debts which exceed the maximum allowance for secured and unsecured debts which a Chapter 13 Debtor can have under Bankruptcy Code Section 109(e), are indicative of the bad faith purpose of filing this case.

As this Court is aware, such distressed property transfers and subsequent bankruptcy filings by either newly created entities or "new owners" are closely scrutinized by the Courts and, if the purpose appears to be to unreasonably deter creditors from realizing on their collateral, the "bad faith" bankruptcy case is dismissed or relief from stay is granted. *In re Powers, supra*, 135 B.R. at 991 (transfer of 20% interest in distressed property and immediate Chapter 13 bankruptcy filing found to be "bad faith" and grounds for dismissal of Chapter 13 case as well as sanctions) citing a plethora of cases[2]; *Duggan v. Highland-First Avenue Corporation,* 25 B.R. 955, 962 (Bkrtcy. C.D.Cal. 1982) ("When confronted with `badges of bad faith' courts will scrutinize the conduct of the debtor to determine whether the filing of the petition constituted an abuse or misuse of bankruptcy jurisdiction.") (citations omitted).

The *Powers Case* is instructive here. In *Powers* owners of over-encumbered land who were unable to obtain a loan to halt a foreclosure, purportedly transferred ownership of 20% of the land to the debtor. The debtor immediately filed a Chapter 13 case and asserted the automatic stay to stop the creditor's foreclosure sale. The debtor confirmed a Chapter 13 Plan and the creditor, who did not object to the plan, brought a motion to dismiss the case, for relief from stay and for Rule 9011 sanctions for the bad faith filing

---

[2] Chapter 13 "bad faith" cases cited *In re Hundley*, 99 B.R. 306, 308 (Bankr.E.D.Va.1989) ("[L]ack of good faith is sufficient ground upon which to either dismiss the Chapter 13 case or deny confirmation of a plan."), *In re Fulks*, 93 B.R. 274, 276 (Bankr. M.D.Fla.1988); *In re Lawson*, 93 B.R. 979 (Bankr.N.D.Ill.1988); *In re Newsome*, 92 B.R. 941, 943 (Bankr.M.D.Fla.1988); *In re Mountcastle*, 68 B.R. 305 (Bankr.M.D.Fla. 1986); *In re Setzer*, 47 B.R. 340 (Bankr. E.D.N.Y.1985); *In re Ratmansky*, 7 B.R. 829 (Bankr.E.D.Pa.1980); Chapter 11 "bad faith" cases cited, *In re Arnold*, 991*991 806 F.2d 937, 939 (9th Cir.1986) (Chapter 11 Case dismissed); *In re Can-Alta Properties, Ltd.,* 87 B.R. 89, 91 (9th Cir. BAP 1988) (Chapter 11 Case dismissed); *In re Walter,* 108 B.R. 244 (Bankr.C.D.Cal.1989) (Chapter 11 Case dismissed);

1   by the Debtor.

2       The *Powers* Court first stated that "[i]t is well settled throughout the circuits,

3 including the Ninth, that "cause" for relief from stay under § 362(d)(1) may include a

4 finding by the Court that debtor's petition was filed in bad faith." See, *In re Powers,*

5 *supra,* 135 B.R. at 998, citing, substantial authority, including, the Ninth Circuit and

6 California cases of *In re Arnold,* 806 F.2d 937, 939 (9th Cir.1986); *In re Kemble,* 776

7 F.2d 802, 807 (9th Cir. 1985); *In re Yukon Enterprises, Inc.,* 39 B.R. 919, 921 (Bankr.

8 C.D.Cal.1984); *In re Victory Construction Co.,* 9 B.R. 549 (Bankr.C.D.Cal.1981) (other

9 citations omitted); See also, *In re Thirtieth Place, Inc.,* 30 B.R. 503, 505 (9th Cir. BAP

10 1983) ("A petition filed in bad faith may manifest an intent to cause hardship or to delay

11 creditors by resort to the Chapter 11 device merely for the purpose of invoking the

12 automatic stay, without an intent or ability to reorganize [one's] financial activities.")

13       The *Powers* Court then discussed at length these "bad faith" cases which

14 delineated some common badges of bad faith often found where there is a transfer of

15 distressed real property on the eve of foreclosure quickly followed by a bankruptcy case

16 filed by the transferee. Some of these factors include

17         1. The transfer of distressed real property into a newly created or dormant
        entity, usually a partnership or corporation;

18         2. The transfer occurring within close proximity to the filing of the
        bankruptcy case;

19         3. No consideration being paid for the transferred property other than stock
        in the debtor;

20         4. The debtor having no assets other than the recently transferred,
        distressed property;

21         5. The debtor having no or minimal unsecured debts;
        6. The debtor having no employees and no ongoing business; and,

22         7. The debtor having no means, other than the transferred property, to
        service the debt on the property.

23

24 *In re Powers, supra,* 135 B.R. at 992-997, quoting *In re Yukon Enterprises, Inc.,* 39 B.R.

25 919, 921 (Bankr.C.D.Cal.1984) and several other cases.

26       Many of these factors are present here, including the transfer of the distressed

27 Property to a "new" individual (the Debtor has no relationship with any of the creditors),

28

Memorandum Of Points And Authorities In Support Of Motion For Determination That The Automatic Stay
Is Inapplicable, Or Alternatively For Relief From The Automatic Stay, And For Sanctions

within close proximity to the filing, with no purported consideration being paid, the Debtor having no assets other than the recently transferred distressed Property, the Debtor lists no unsecured debts, and the Debtor has no means other than the transferred Property to service the debt on the Property. The *Yukon Enterprises,* badges of bad faith are clearly present here.

Since *Powers*, just as the instant case, was a Chapter 13 case where property was transferred to a "new" individual who was not the creditor's borrower and not a newly formed entity as in the Chapter 11 cases, since Chapter 13 is for individuals, the *Powers* court also provides some of the factors evidencing "bad faith" in a Chapter 13 case which the Courts have cited in connection with plan confirmation, including:

> 1. The debtor has few or no unsecured creditors.
> 2. There has been a previous bankruptcy petition by the debtor or a related entity.
> 3. The pre-petition conduct of the debtor has been improper.
> 4. The petition effectively allows the debtor to evade court orders.
> 5. There are few debts to non-moving creditors.
> 6. The petition was filed on the eve of foreclosure.
> 7. The foreclosed property is the sole or major asset of the debtor.
> 8. There is no possibility of reorganization.
> 9. Debtor's income is not sufficient to operate.
> 10. There is no pressure from non-moving creditors.
> 11. Reorganization essentially involves the resolution of a two-party dispute.
> 12. The debtor filed solely to obtain the automatic stay.

*In re Powers, supra*, 135 B.R. at 992-95, quoting, *In re Grieshop,* 63 B.R. 657 (N.D.Ind.1986).

A multitude of these Chapter 13 bad faith factors are present here. The Debtor lists no unsecured creditors, there are few debts to non-moving creditors, the petition was filed on the eve of foreclosure, the foreclosed property is the sole or major listed asset of the Debtor, there is no possibility of reorganizing, the Debtor's income is insufficient to operate (i.e. pay the operating expenses and debt service), there is no pressure from non-moving creditors, reorganization essentially involves the resolution of a two-party dispute – namely the foreclosure on the Property, and the debtor filed this bankruptcy solely to obtain the automatic stay.

Case: 10-41570   Doc# 16   Filed: 05/21/10   Entered: 05/21/10 23:51:28   Page 19 of
Memorandum Of Points And Authorities In Support Of Motion For Determination That The Automatic Stay
Is Inapplicable, Or Alternatively For Relief From The Automatic Stay, And For Sanctions

Other common questions asked by courts in assessing the good faith of a Chapter 13 Debtor regarding Chapter 13 Plan confirmation include:

a. Are there deficiencies and/or inaccuracies in the debtor's statement and plan that could be construed as an attempt by debtor to mislead the court?

b. Are the payments proposed in the plan fundamentally fair? [This may include considerations of the timing of the filing and the amounts proposed to be paid].

c. Did the debtor have an improper motive in seeking relief? [It is appropriate here to consider the manner in which the debts were incurred].

d. Under the "totality of circumstances", has there been an abuse by debtor of the provisions, purposes and/or spirit of Chapter 13?

*In re Powers, supra,* 135 B.R. at 993, citing, *In re Lawson, supra,* 93 B.R. 979, 986 (Bkrtcy. N.D. Ill. 1988).

In the instant case, the Debtor filed its Petition on the eve of foreclosure of the Property. The Debtor's Schedules and Statement of Affairs are incomplete and misleading, including assertions that: (i) the Debtor owns the Property, then claiming that it owns 100% of Kang, Inc., "the titled owner" of the Property, when in fact Kang, Inc. only owns 50% of the Property; (ii) the Debtor has only two secured creditors, EIM and Kolto, even though there are a many other liens. The Statement of Affairs list three years of revenues from the Property even though according to the Director's resolution, the alleged transfer of Kang, Inc. was signed in August of 2009. The Debtor's plan only provides for payment of $700 a month toward curing the over $80,000 arrearage and for payments outside the plan which exceed the Debtor's purported income. The totality of circumstances leads to only one conclusion, this is a bad faith bankruptcy filing in order to improperly assert the automatic stay to hinder, delay and defraud EIM from foreclosing whilst at the same time usurping the income from the gas station.

**b.    The Debtor Has The Burden Of Proof In This Bad Faith Case**

"While the Bankruptcy Code is silent regarding the burden of proof as to dismissals, courts have consistently held that once a debtor's good faith is in issue, the debtor bears the burden of proving the petition was filed in good faith." *In re Powers, supra*, 135 B.R. at 997, citing, *In re Bingham*, 68 B.R. 933 (Bankr.M.D.Pa.1987)(citing *In re Setzer*, 47 B.R. 340 (Bankr. E.D.N.Y.1985)); *In re Holi-Penn, Inc.*, 535 F.2d 841, 844 (3d Cir.1976)."

> With respect to the burden of proof in establishing debtor's good faith in Chapter 11 proceedings, and more particularly "new debtor syndrome" cases, numerous courts have followed the holding of *In re Yukon Enterprises, Inc.*, 39 B.R. 919, 921 (Bankr. C.D.Cal.1984), that 'once the creditor establishes that the transfer of the distressed property to the debtor was in close proximity to the filing of the case, a prima facie showing of bad faith has been shown, thus creating a rebuttable presumption of bad faith.' Where a prima facie showing has been made the burden is thereafter on the debtor to establish good and sufficient reasons why relief should not be granted. *See also In re Rye*, 54 B.R. 180, 182 (Bankr. D.S.C.1985); *In re Nelson,* 66 B.R. 231, 234 (Bankr.D.N.J.1986).

Id. at 997-998.

**c.    Other Cause Exists To Grant Relief From Stay.**

Other cause exists to grant EIM relief from the automatic stay, including, without limitation, a lack of adequate protection, unauthorized use of cash collateral, failure to make post-petition payments, and the inability of the Debtor to confirm a Chapter 13 Plan which restructures the debts of Kang, Inc., a non-debtor entity which does not qualify for Chapter 13 relief.

The Debtor is not paying the Property taxes, Kolto or EIM during this Chapter 13 case. The Debtor's lack of ownership or equity in the Property and the Debtor's assertion that EIM is undersecured means that every dollar that accrues in property taxes and on Kolto's senior secured obligation means a dollar for dollar loss to EIM and EIM is not adequately protected. Moreover, according to the Debtor's schedules, the Debtor only requires less than $300 in monthly living expenses. The remaining revenues from the operation of the gas station must be used to pay EIM's secured and

17
*In re Amiri, No. 10-41570*

Case: 10-41570    Doc# 16    Filed: 05/21/10    Entered: 05/21/10 23:51:28    Page 21 of 28
Memorandum Of Points And Authorities In Support Of Motion For Determination That The Automatic Stay Is Inapplicable, Or Alternatively For Relief From The Automatic Stay, And For Sanctions

"undersecured" obligation (either as cash collateral, or as a payment to unsecured creditors). EIM holds an absolute assignment of rents, issues and profits from the Property.

Additionally, and notwithstanding the Debtor's statement that it will pay EIM $5070 per month ($770 per month under the Plan and $4300 per month outside the Plan), no payments have been made during the 3 month pendency of this case.

The Debtor's continued free use of EIM's cash collateral and failure to make any payments to EIM is "cause" for terminating the automatic stay since the Debtor's failure to diligently pursue confirmation is delay which is detrimental to the interests of creditors and "cause" under Bankruptcy Code Section 1307 for dismissal of this case.

The Debtor's Chapter 13 Plan is not confirmable. Not only has the Debtor failed to make any payments to Lender (or other secured creditors) for over a year since February of 2009, including not making any Post-Petition payments to EIM during this Bankruptcy Case, it has also failed to pay real property taxes which accrue ahead of Lender and to Lender's detriment and there is no provision in the Plan for doing so. Similarly, there is no provision in the Plan for making payments to the other secured creditors either in or outside of the Plan. The $700 per month payments to "cure" the $80,000 in delinquencies owed to EIM are absurd as are the Debtor's suggestions that it will pay its debt service outside the Plan when it does not have the income stream to do so. Moreover, the property taxes and Kolto senior debt continue to accrue penalties, interest, fees and costs, with a dollar for dollar detriment to EIM and no provisions in the Plan to make these payments. Even the notion that the Debtor is attempting to restructure the debts of Kang, Inc. in his individual Chapter 13 case, is contrary to the purpose and spirit of Chapter 13's restructuring of debts for individual wage earners.

Noticeably absent from the court docket is any indication that the Debtor is diligently pursuing Chapter 13 Plan confirmation. No amended Chapter 13 Plan has been filed or set for a confirmation hearing after this case has been pending for over 3

Memorandum Of Points And Authorities In Support Of Motion For Determination That The Automatic Stay Is Inapplicable, Or Alternatively For Relief From The Automatic Stay, And For Sanctions

months. The reason for this delay is that the Debtor cannot propose, let alone confirm, a Chapter 13 Plan which restructures Kang, Inc.'s debts.

There is no question that cause exists under Bankruptcy Code Section 362(d)(1) to grant EIM relief from the automatic stay.

**2. EIM Is Entitled To Relief From The Automatic Stay Because The Debtor Lacks Equity In The Property And The Property Is Not Necessary To An Effective Reorganization (§362(d)(2)).**

Bankruptcy Code Section 362(d)(2) provides that EIM is entitled to relief from the automatic stay where the Debtor lacks equity in the property and the property is not necessary for an effective reorganization. 11 U.S.C. §362(d)(2).

### a. The Debtor Lacks Equity In The Property.

A debtor lacks equity in the property for purposes of Bankruptcy Code Section 362(d)(2) when the debts secured by liens on the property exceed the value of the property. *Stewart v. Gurley*, 745 F.2d 1194, 1195 (9th Cir. 1984).

The secured debt on the Property now exceeds $1,132,952.37 as against the Debtor's valuation of $700,000. There is no equity for the Debtor or the estate in the Property, even if the Debtor owned it.

### b. No Effective Reorganization Is In Prospect.

In order for the Property to be necessary for an "effective" reorganization, there must be a reasonable possibility of a successful reorganization within a reasonable time. United Sav. Ass'n of Tex. V. Timbers of Inwood Forest Assoc., Ltd, 484 U.S. 365, 375-376, 108 S. Ct. 626, 632, 98 L.Ed. 2d 740, 750-751 (1988).

The fundamental problems that the Debtor faces in attempting to reorganize here include: this is an individual Chapter 13 case,-- not a Chapter 11 case for Kang, Inc.., the Debtor does not own the Property, the Property is not property of the estate, the Debtor lacks sufficient income to service the secured debts against the Property or catch up on overdue amounts and the Debtor has no other assets or money. Since the Debtor concedes the lack of equity in the Property, the Debtor bears the burden of

1  demonstrating how this non-estate Property, which is not owned by the Debtor, is
2  necessary for the Debtor's effective reorganization. The Debtor cannot do so.

3  **C.  The Debtor And Its Counsel Should Be Sanctioned For This Bad Faith Filing
       And The Improper Assertion Of The Automatic Stay To Hinder, Delay and
4      Defraud EIM**

5       In this sham bankruptcy case, filed on the eve of foreclosure, by an individual who

6  does not own the Property he listed in his schedules, and who cannot possibly confirm a

7  Chapter 13 plan to restructure the debts of a corporation, Kang, Inc. sanctions against

8  both the debtor and the debtor's attorney under Bankruptcy Rule 9011 are mandated. *In*

9  *re Powers, supra,* 135 B.R. at 1001-1002 (Rule 9011 sanctions are mandated in a "bad

10 faith" Chapter 13 case where a 20% interest in distressed property was transferred on

11 the eve of foreclosure to an individual for the purposes of invoking the automatic stay to

12 hinder and delay secured creditor).

13      As the *Powers* court stated in holding that the creditor was entitle to recover Rule

14 9011 Sanctions from the debtor and her counsel, jointly and severally, all of its attorneys'

15 fees and costs incurred during the Chapter 13 case:

16              the focus of a Rule 9011 inquiry is not on whether the case
                was filed in bad faith, but whether, prior to the filing, debtor
17              and her counsel made reasonable inquiries which would lead
                them to believe that the filing was warranted by existing law
18              or a good faith argument for the extension, modification or
                reversal of existing law. And whether or not counsel
19              subjectively believed he or she could make such an
                argument, the test is whether, objectively, such belief was
20              reasonable. [Id.]

21      As stated above and echoed by numerous courts "creditors must be able to rely

22 on schedules prepared by debtors and their attorneys in enforcing their rights under

23 security documents." *In re Torrez, supra*, 132 B.R. at 940, citing, *In re Gregg's Custom*

24 *Vans*, 122 B.R. 727, 728 (Bkrtcy. W.D. Mo 1991) and *In re B& B Enterprise*, 69 B.R. 45,

25 47 (Bkrtcy. E.D. Mo. 1986).

26      Indeed because a willful violation of the automatic stay carries the potential for

27 punitive damages, the preparation of the Petition and the Schedules is extremely

28

*In re Amiri No. 10-41570*
Memorandum Of Points And Authorities In Support Of Motion For Determination That The Automatic Stay
Is Inapplicable, Or Alternatively For Relief From The Automatic Stay, And For Sanctions

1  important.  Here the Debtor asserted in his Schedules that he is the owner of the

2  Property and, in the same Schedules said that he is the owner of 100% of Kang, Inc.,

3  the "titled owner" of the Property.  The Debtor also listed himself as dba, Brentwood

4  American Station, which is the name that the gas station operates.  The Debtor does not

5  hold title to the Property.  The Debtor intentionally misrepresented his ownership of the

6  Property in his individual name so that he could assert the automatic stay as enjoining

7  EIM's foreclosure on the Property, which the Debtor's counsel readily did.

8        It is elementary for any attorney practicing before this Court to know that under

9  Bankruptcy Rule 9011, his filing and/or signing of any document submitted to this Court

10  is well grounded in fact and law.  EIM requests that the Court sanction the Debtor and

11  his counsel for this bad faith abuse of the bankruptcy laws for the purpose of hindering,

12  delaying and defrauding creditors, specifically EIM.  EIM does not believe that either the

13  Debtor or his counsel will be able to demonstrate the factual or legal basis for asserting

14  that the Debtor owned the Property so as to invoke the automatic stay.  EIM further

15  questions the Debtor's alleged ownership of the shares of stock of Kang, Inc. and

16  requests that the Court inquire as to the basis for the Debtor's assertion that he owns

17  100% of the stock of Kang, Inc., when it was transferred and proof of any consideration

18  paid and further requests that the Court inquire of Debtor's counsel how the Debtor's

19  purported ownership of the stock of Kang, Inc. somehow invokes the automatic stay of

20  the Debtor's individual Chapter 13 case.

21        EIM requests sanctions of the attorneys fees it has incurred in the Debtor's

22  Chapter 13 case and turnover of its cash collateral all of which was made necessary by

23  the Debtor's false assertion of ownership and the faulty assertion of the automatic stay.

24

25                    IV.    **CONCLUSION**

26        The Debtor does not own the Property and the Property is not property of the

27  estate.  The automatic stay of the Debtor's individual Chapter 13 case is inapplicable to

28

1    the non-judicial foreclosure sale by EIM of the Property.

2         Even *assuming arguendo,* that the stay were applicable with regard to the

3    Property, which it is not, grounds exist to grant relief from the automatic stay to EIM both

4    due to: (1) the existence of "cause" due to this "bad faith" filing resulting from the  for the

5    Debtor's continued unauthorized use of cash collateral, the Debtor's failure to make

6    payments to senior lienholders or EIM to the detriment of EIM, and the Debtor's failure to

7    actively pursue confirmation of a Chapter 13 Plan here; and (2) the lack of any interest or

8    equity in the Property for the Debtor or his estate and the lack of the need for the

9    Property.

10        This bankruptcy case was commenced in bad faith for the purpose of hindering,

11   delaying and defrauding EIM from being able to complete its foreclosure sale on

12   Property which is not owned by the Debtor.  The Debtor and his counsel should be

13   sanctioned for this abuse of the bankruptcy laws which has caused loss to EIM and

14   unnecessary consumption of this Court's time.

15

16   DATED:  May 21, 2010.          LAW OFFICES OF EUGENE K. YAMAMOTO

17

18                          By:  _____

19                               Eugene K. Yamamoto,
                                 Attorneys for Secured Lienholder,
20                               EIM-El Segundo, Inc.

21

22

23

24

25

26

27

28

                                              22                In re Amiri, No. 10-41570
        Memorandum Of Points And Authorities In Support Of Motion For Determination That The Automatic Stay
        Is Inapplicable, Or Alternatively For Relief From The Automatic Stay, And For Sanctions